## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PASSENGER VESSEL ASSOCIATION | ) | |
| | ) | In re Subpoena Relating to |
| Non-party movant | ) | Case No. 06-CA-11299-GAO |
| | ) | Pending in the United States |
| v. | ) | District Court for the District |
| | ) | of Massachusetts |
| CHRIS MCLAUGHLIN, et al. | ) | |
| | ) | |
| Subpoena Issuer | ) | Misc. No. _____ |

## MOTION TO QUASH, OR, ALTERNATIVELY
## TO LIMIT THIRD-PARTY SUBPOENA

The Passenger Vessel Association, by and through its undersigned attorneys, moves this Court for an Order quashing the Subpoena *Duces Tecum* issued on January 22, 2008 from this Court by counsel for Chris McLaughlin, et al., Plaintiffs in McLaughlin, et al. v. Harbor Cruises LLC, et al., Case No. 06-CA-11299-GAO, a case pending in the U.S. District Court for the District of Massachusetts. A Memorandum in support of this Motion and a proposed Order are attached hereto.

Respectfully submitted,

_____
Thomas C. Mugavero, Esq. (D.C. Bar No. 431512)

Steven E. Bers, Esq.
Heather A. James, Esq.
WHITEFORD, TAYLOR & PRESTON, LLP
1025 Connecticut Avenue, N.W.
Suite 400
Washington, D.C.  20036
(202) 659-6800
(202) 327-6171 (facsimile)
tmugavero@wtplaw.com

*Counsel to nonparty Passenger Vessel Association*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 31st day of January, 2008, a copy of the enclosed

Motion to Quash, Memorandum in Support and Proposed Order was mailed first class, postage

prepaid to:

Matthew L. Tuccillo, Esq.
SHAPIRO, HABER & URMY, LLP
53 State Street
Boston, MA 02109

_____
Thomas C. Mugavero

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

PASSENGER VESSEL ASSOCIATION )
                                   )     In re Subpoena Relating to
           Non-party movant        )     Case No. 06-CA-11299-GAO
                                   )     Pending in the United States
v.                                 )     District Court for the District
                                   )     of Massachusetts
CHRIS MCLAUGHLIN, et al.         )
                                     )
           Subpoena Issuer         )     Misc. No. _____

## MEMORANDUM IN SUPPORT OF MOTION TO QUASH, OR, ALTERNATIVELY, TO LIMIT THIRD-PARTY SUBPOENA

NOW COMES non-party movant, the Passenger Vessel Association ("PVA"), by and through its undersigned attorneys, and pursuant to Rule 45(c)(3)(A) of the Federal Rules of Civil Procedure, moves the Court for an order quashing a third-party Subpoena *Duces Tecum* (the "Subpoena") served on PVA by Plaintiffs Chris McLaughlin, et al., ("Plaintiffs") in connection with a lawsuit currently pending in the U.S. District Court for the District of Massachusetts (the "Massachusetts Action"). Alternatively, PVA seeks an order from the Court limiting the Subpoena to PVA's factual knowledge and relevant documents concerning the underlying events of the Massachusetts Action.

### INTRODUCTION AND STATEMENT OF FACTS

First and most importantly, PVA is not a party to the Massachusetts Action and has no interest in its outcome. Plaintiffs first filed suit against the various Defendants in May 2003 in the U.S. District Court for the District of Massachusetts. Now, five years later, it has chosen to serve onerous and improper discovery demands upon PVA, with the shortest response time, at the single-most time limited period of the year for the PVA ( amid its annual convention demanding the full service of every PVA employee), without so much as the courtesy of an

advance telephone call. In short, the discovery demand placed upon PVA as a non-party has occurred without even minimal professional courtesy, indifferent in timing and content to the burden upon a non-party.

The case appears to the PVA to involve employment claims against the Defendants for failure to pay overtime wages in alleged violation of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.*   PVA is a non-profit trade association to the industry and has no first hand knowledge of the facts in this case.   Neither PVA nor its employees had any involvement in the employment events underlying the claims.

The Subpoena at issue in this motion was served on PVA on or about January 23, 2008. Subpoena, attached hereto as Exhibit A. The Subpoena calls for PVA to appear on February 12, 2008 in Washington, D.C. and provide deposition testimony on fourteen areas of inquiry specified in a "30(b)(6) Schedule" ("Schedule A") attached to the Subpoena. The subject matters of the testimony specified in Schedule A largely relate to PVA's legal conclusions as to the impact of federal, state and local regulations and the "seaman" exemption on overtime requirements under the FLSA. The Subpoena does not seek any testimony from PVA concerning its knowledge of Plaintiffs, their employment with the Defendants, Defendants' actions in determining what wages to pay Plaintiffs, or any other relevant facts giving rise to Plaintiffs' claims in the Massachusetts Action. In short, the subpoena seeks to have PVA provide evidence that is totally irrelevant to the issues in question: what PVA may feel the generic application is of the "seaman" exemption to the facts in this case ( PVA has no knowledge of the facts) or what PVA feels to be the legal interpretation of "seaman" ( which is solely the province of the Court).

The Subpoena also calls for thirteen categories of documents, mostly relating to documents and communications either regarding, or forming the basis for, PVA's position on the

applicability of the FLSA "seaman" exemption to certain labor categories in the maritime industry. Essentially, the Subpoena requests the production of virtually every piece of paper of the PVA referring to the "seaman" exemption in the maritime industry generally, including all underlying data PVA reviewed or relied upon in forming its opinion about overtime requirements in the maritime industry. Other requests demand information related to non-party trade association members, including any legal actions or investigations involving such non-party members over the past nine years. The Subpoena would be burdensome even if issued against a party. Since it is issued against a non-party, it is unreasonably burdensome and should be quashed in its entirety or dramatically limited. This Motion to Quash follows.

## ARGUMENT

PVA moves to quash the Subpoena on five separate grounds: (1) because PVA has no relevant factual knowledge of the claims or defenses asserted in the Massachusetts Action; (2) because the Subpoena does not seek any relevant lay testimony from PVA, but instead attempts to force PVA to provide expert witness testimony as an unretained expert; (3) because the Subpoena calls for PVA to testify concerning its position on purely legal issues, which is an impermissible use of a Rule 45 subpoena; (4) because the scope of documents sought by the Subpoena is unreasonably broad; and (5) because even assuming the scope of Plaintiffs' Subpoena was proper, the timing of the Subpoena and the short time frame for response makes compliance impossible, in that it falls during PVA's Annual Convention activities, the single busiest time of year for the trade association. For the reasons stated more fully below, the Court should quash Plaintiffs' Subpoena, or alternatively, limit the areas of inquiry and documents sought in the Subpoena to PVA's knowledge of the relevant facts in the Massachusetts Action, and allow PVA adequate time to prepare for the deposition.

### A.     Legal Standard of Review.

To compel a nonparty to produce documents and appear for a deposition, a litigant must use a subpoena *duces tecum* pursuant to Fed. R. Civ. P. 45(d)(1). The Advisory Committee Notes to the 1970 Amendment to Fed. R. Civ. P. 45 state that the "scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules." Fed. R. Civ. P. 45 Advisory Committee Note (1970). Thus, discovery requests under Fed. R. Civ. P. 45 are always subject to the scope and limitations of Fed. R. Civ. P. 26(b), which sets the standard for the permissible scope of discovery.

Rule 26(b)(1) states, in relevant part:

> Parties may obtain discovery regarding any matter, not privileged, that is <u>relevant</u> to the claim or defense of any party . . . . For good cause, the court may order discovery of any matter <u>relevant</u> to the subject matter involved in the action. <u>Relevant</u> information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1) (emphasis added).

While Fed. R. Civ. P. 45 does not specifically include relevance as an enumerated reason for quashing a subpoena, as stated *supra*, the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b), which requires that any discovery sought by a party must be relevant to the action. Thus, in determining whether the Subpoena in this case imposes an undue burden on PVA, the Court must examine whether the Subpoena is overly broad or seeking irrelevant information under the same standards.

Under the Federal Rules, a court <u>shall</u> quash or modify a subpoena if the subpoena "fails to allow a reasonable time for compliance," or "subjects the person to undue burden." Fed. R. Civ. P. 45 (c)(3)(A). In addition, a subpoena may be quashed or modified when it "requires disclosure of an unretained expert's opinion or conclusions." Fed. R. Civ. P. 45(c)(3)(B)(i)-(m).

4

Plaintiffs' Subpoena presents all of the foregoing factors. In addition, the Subpoena primarily seeks to have PVA testify concerning its own legal interpretations of FLSA overtime exemptions and related laws and regulations, which constitutes inadmissible legal opinion testimony. Accordingly, for these reasons which are set forth more fully below, the Court should quash the Subpoena.

**B.    PVA Has No Relevant Factual Information Regarding the Claims and Defenses in Plaintiffs' Case.**

Pursuant to Fed. R. Civ. P. 26(b), any information sought by means of subpoena must be relevant to the claims and defenses in the underlying case. More precisely, the information sought must be "reasonably calculated to lead to admissible evidence." Fed. R. Civ. P. 26(b). Discovery may not be had regarding a matter which is not relevant to the subject involved in the pending action. Fed. R. Civ. P. 26(b)(1).

A central issue in the Massachusetts Action is the applicability of the FLSA "seaman" exemption to Plaintiffs' employment with the Defendant passenger vessels. Briefly, the FLSA mandates payment of overtime to nonexempt employees. One of several exemptions to the FLSA applies to "any employee employed as a seaman." 29 U.S.C. § 213(b)(6). FLSA regulations state that whether the employee is a seaman "depends upon the character of the work [he or she] actually performs." 29 C.F.R. § 783.33. The regulations further state that the exemption applies if the employee performs, as master or subject to the authority, direction, and control of the master aboard a vessel, service which is rendered primarily as an aid in the operation of such a vessel as a means of transportation, provided he performs no substantial work of a different character." 29 C.F.R. § 783.31. The regulations define "substantial" as more than twenty percent. 29 C.F.R. § 783.37. Plaintiffs' entire case hinges on the question of whether the job functions they performed for Defendants qualified them as "seamen," and therefore exempted them from collecting overtime wages.

5

Whether Plaintiffs meet the definition of "seamen" for purposes of FLSA overtime requirements depends entirely upon the facts surrounding Plaintiffs' employment activities. However, PVA has no knowledge of Plaintiffs' employment with Defendants or of any facts at issue in the Massachusetts Action. See Declaration of John Groundwater, attached hereto as Exhibit B. Thus, PVA has no factual knowledge whatsoever, and thus cannot testify about: 1) the Plaintiffs; 2) their employment with any of the Defendants; 3) the nature of their duties while employed by any of the Defendants; or 4) Defendants' decisions or actions with respect to any of the Plaintiffs' employment wages.

Significantly, the Subpoena does not compel PVA to testify about its knowledge or perceptions of any of the foregoing fact issues involved in the Massachusetts Action. Instead, the areas of inquiry identified in the Subpoena clearly demonstrate that Plaintiffs intend to explore, and perhaps impeach, PVA's opinions about the propriety of the Defendants' actions towards their employees. Worse, the Subpoena does not even limit its inquiry to PVA's opinions about overtime issues in the Massachusetts Action, which would be improper enough. Plaintiffs further seek discovery of information related to PVA's opinions on the issue of overtime wages in connection with any operator of a passenger vessel, from 1999 to present, which begins to suggest that Plaintiffs may intend to use PVA to identify other potential classes of employees who might have a cause of action for unpaid overtime wages against other employers not party to the Massachusetts Action. Plaintiffs inexplicably also seek information from PVA regarding "any other litigation regarding [Defendant] BHC." Pursuant to Fed. R. Civ. P. 26(b)(1), all of the foregoing areas of inquiry are completely irrelevant to the claims and defenses in the Massachusetts Action, nor can such information be reasonably calculated to lead to the discovery of admissible evidence.

6

Based on the foregoing, since the discovery sought by Plaintiffs is not relevant, nor reasonably calculated to lead to the discovery of admissible evidence, the Subpoena places an undue burden on PVA and the Court should quash it.

**C.    The Subpoena Improperly Compels PVA to Provide Unretained Expert Testimony**

Fed. R. Civ. P. 45(c)(3)(B)(ii) provides that the court may quash or modify the subpoena if it requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party. Statutory Committee of Unsecured Creditors v. Motorola, Inc., 218 F.R.D. 325 (D.C. 2003) (motion to quash granted where plaintiff sought analytical reports on mobile satellite communications market from non-party). Moreover, courts have generally declined to force a non-party expert witness to testify against his will, absent extraordinary circumstances. Id.

Under the Federal Rules of Evidence, a lay witness may only give his opinions or inferences as long as they are "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Since PVA clearly has no personal knowledge of the facts underlying Plaintiffs' claims in the Massachusetts Action, the trade association cannot be properly called as a fact witness in the case; its testimony could only be characterized as opinion or "expert" testimony.

Even if Plaintiffs could demonstrate that Defendants in the Massachusetts Action, in deciding whether or not to pay Plaintiffs overtime wages, relied exclusively on PVA's advice and opinions, there still would not be grounds to enforce the Subpoena. Id. at 327. PVA has no way of knowing how any of its published articles or opinions on FLSA or other overtime exemptions may have been used or relied upon by any Defendant, or anyone else for that matter.

As stated *supra*, PVA is a non-party to the Massachusetts Action, and none of its employees have provided expert witness testimony or services to any party in that litigation under Fed. R. Civ. P. 26(b)(4). Since PVA has no factual knowledge about which it could testify, and since PVA cannot be compelled in this instance to provide unretained expert testimony, the Court should quash Plaintiffs' Subpoena.

**D.    Plaintiff's Subpoena Seeks Inadmissible Legal Opinion Testimony from PVA.**

More troubling than Plaintiffs' attempt to obtain irrelevant discovery through its Subpoena is Plaintiffs' obvious attempts to elicit inadmissible legal opinion testimony from PVA.

It is well settled in the District of Columbia that an expert may not state his or her opinion as to legal standards, nor may he or she state legal conclusions drawn by applying the law to the facts. Steele v. D.C. Tiger Market, et al., 854 A.2d 175 (D.C. Cir. 2003), citing Christiansen v. City of Tulsa, 332 F.3d 1270, 1283 (10th Cir. 2003) (upholding exclusion of expert's opinion that a defendant acted recklessly). Questions of law, specifically the construction or applicability of statutes or other laws or regulations, are to be decided only by the Court, not by the witnesses. Id.

Here, Plaintiffs improperly attempt to compel PVA's testimony on a variety of overtime liability issues in the maritime industry. By way of specific example, the Subpoena compels PVA's testimony about the applicability of various "federal, state or local statute, rule, or regulations [sic] pertaining to overtime wages and/or any "seaman" exemptions thereto to employees working on or in support of passenger vessels, including without limitation persons generally characterized as "Deckhands," "Senior Deckhands," and "Galley Staff." (Schedule A, ¶ 3). The subject matter of this and similar inquiries in the Subpoena does not involve factual opinions derived from PVA's first-hand observance of the facts of the Massachusetts action.

These areas address quintessentially legal conclusions, and if permitted, PVA's testimony on these subjects would only operate to usurp the role of the trier of fact in the Massachusetts Action. Moreover, the First Circuit has already held that cases raising the issue of whether a particular maritime worker is a "seaman" are "of necessity fact specific;" and "will depend on the nature of the vessel and the employee's precise relation to it." McLaughlin v. Boston Harbor Cruises, Inc., No. 04-1519 (1st Cir. 2005). .

Since the Federal Rules of Evidence do not recognize expert witnesses on the law, PVA's testimony would be utterly inadmissible, and further unlikely to lead to the discovery of admissible evidence. Fed. R. Evid. 704. Accordingly, the Subpoena is unduly burdensome and pursuant to Fed. R. Civ. P. 45 (c)(3)(A), should be quashed.

### E.     The Scope of Documents Sought by the Subpoena Is Unreasonably Broad.

PVA first objects to the scope of the Subpoena. It demands production of documents from 1999 to present, a nine-year period, which is excessive considering that Plaintiffs' lawsuit was not filed until 2003. Exh. A at p. 5. Further, as explained below, many of the document requests are unreasonably broad, to the point of being utterly improper. The Subpoena also requests production of documents containing the confidential information of trade association members having no involvement in the Massachusetts Action. The disclosure of such sensitive information should not be required, particularly when it has no relevance whatsoever to Plaintiffs' case.

### 1.     PVA's Specific Objections to Plaintiffs' Document Requests.

PVA asserts the following specific objections to the categories of documents the Subpoena requires to be produced:

**1.     All documents concerning or constituting communications between or among PVA and any other Person, including with limitation, BHC, concerning (a) whether operators of passenger vessels are or are not required to pay employees overtime wages under the FLSA or any other federal, state, or local statute or regulation, or whether the**

"seaman" exemption or some other exemption applies to obviate the need for such payments, or (b) the subject matter of this Action or its predecessor, *McLaughlin v. Boston Harbor Cruise Lines, Inc.*, No. 1:03-cv-10905-GAO in the District of Massachusetts (the "Prior Action") or any other litigation regarding BHC.

2.    All documents provided by PVA to any Person, including without limitation BHC, concerning (a) whether operators of passenger vessels are or are not required to pay employees overtime wages under the FLSA or any other federal, state, or local statute or regulation, or whether the "seaman" exemption or some other exemption applies to obviate the need for such payments, or (b) the subject matter of this Action, the Prior Action, or any other litigation regarding BHC.

3.    All documents received by PVA from any Person, including without limitation BHC, concerning (a) whether operators of passenger vessels are or are not required to pay employees overtime wages under the FLSA or any other federal, state, or local statute or regulation, or whether the "seaman" exemption or some other exemption applies to obviate the need for such payments, or (b) the subject matter of this Action, the Prior Action, or any other litigation regarding BHC.

9.    All documents, including without limitation newsletters, bulletins, mailings, brochures, postings on www.passengervessel.com or any other website, e-mails, issues of *Foghorn Magazine*, or materials distributed at PVA's regional meetings or annual convention(s) evidencing any advice, information, guidance, instruction, or commentary generally that PVA disseminated to any Person, including without limitation its members, other operators of passenger vessels, the media, the public, or BHC concerning the subject of whether the FLSA or any other federal, state, or local statute or regulation concerning overtime wages applied to employees working on or in support of passenger vessels.

10.    All documents, including without limitation newsletters, bulletins, mailings, brochures, postings on www.passengervessel.com or any other website, e-mails, issues of *Foghorn Magazine*, or materials distributed at PVA's regional meetings or annual convention(s) evidencing any advice, information, guidance, instruction, or commentary generally that PVA disseminated to its constituent members, the media, or the public concerning the subject of whether the "seaman" exemption or any other exemption to the FLSA or any other federal, state or local statute or regulation concerning overtime wages applied to employees working on or in support of passenger vessels.

Exh. A, pp. 5-8.

The foregoing requests are not reasonably limited by time or subject matter. Literal compliance with these requests would require PVA to sift through more than nine years of documents, including all regular and e-mail correspondence, memoranda and messages, to determine if something concerned a purely legal question related to the applicability of overtime regulations generally in the maritime industry.

10

Requests 1-3 also call for the production of any documents related to <u>any</u> litigation involving BHC, a Defendant in the Massachusetts Action and one of PVA's members. Since BHC is presumably a party to the Massachusetts Action, Plaintiffs should be required to seek these documents first from BHC. Moreover, since these requests refer to documents from separate legal proceedings having nothing to do with the Massachusetts Action, it is difficult to conceive how such documents could be even remotely relevant to Plaintiffs' case.

4.     **All documents concerning any wage and hour investigation(s) of any operators of passenger vessels, including without limitation, BHC, conducted by the U.S. Department of Labor or any other federal, state, or local regulatory or governmental body regarding the issue of overtime pay to employees.**

5.     **All documents concerning any lawsuits filed against any operators of passenger vessels, including without limitation BHC, by anyone concerning the issue of unpaid overtime wages.**

8.     **All documents evidencing communications with any Person concerning the services, advice, opinions, or recommendations PVA provided to BHC concerning the subject matter of this Action or the Prior Action or any other litigation regarding BHC or regarding the issue of overtime wages, including but not limited to the subject of whether members of PVA are or are not required to pay employees overtime wages under the FLSA or any other federal, state, or local statute or regulation, or whether the "seaman" exemption or some other exemption applies to obviate the need for such payments.**

11.     **All legal briefs, including without limitation *amicus curiae* briefs, filed by the PVA in any legal, administrative or alternative dispute resolution proceeding concerning (a) whether operators of passenger vessels are or are not required to pay employees overtime wages under the FLSA or any other federal, state, or local statute or regulation, or whether the "seaman" exemption or some other exemption applies to obviate the need for such payments, or (b) the subject matter of this Action, the Prior Action, or any other litigation regarding BHC or regarding the issue of overtime wages.**

12.     **All documents evidencing testimony, whether oral or written, by PVA, PVA's Legislative Director, PVA's Legislative or Regulatory Issues Committees or any other PA committee, or any witness testifying on behalf of PVA or its membership, given in any legal proceeding, alternative dispute resolution proceeding, administrative hearing, or legislative hearing or session concerning (a) whether operators of passenger vessels are or are not required to pay employees overtime wages under the FLSA or any other federal, state, or local statute or regulation, or whether the "seaman" exemption or some other exemption applies to obviate the need for such payments, or (b) the subject matter of this Action, the Prior Action, or any other litigation regarding BHC or regarding the issue of overtime wages.**

Id. at pp. 6-8.

To the extent that the foregoing requests seek information related to Defendant BHC, again, such information should be obtained from BHC itself. With respect to information concerning other operators of passenger vessels, PVA again contends that such information is immaterial to Plaintiffs' case and therefore improperly sought. To the extent that PVA even has documents responsive to these requests, PVA would consider such information concerning PVA's member companies to be confidential and sensitive, and PVA would guard it as such. These Requests appear to be nothing more than an attempt by Plaintiffs to fish for other potential employee claims against passenger vessel owners, information to which Plaintiffs are not entitled. Disclosure to Plaintiffs of any information provided to PVA concerning investigations or legal proceedings involving trade association members unrelated to Plaintiffs' case would certainly have a chilling effect on the relationship between PVA and its members, and would cause irreparable harm to both PVA and its member companies.

**6.     All documents concerning any and all recommendations, opinions, advice, or services provided by PVA to any Person, including without limitation BHC, concerning (a) whether operators of passenger vessels are or are not required to pay employees overtime wages under the FLSA or any other federal, state, or local statute or regulation, or whether the "seaman" exemption or some other exemption applies to obviate the need for such payments, or (b) the subject matter of this Action, the Prior Action, or any other litigation regarding BHC or regarding the issue of overtime wages.**

**7.     All documents that PVA considered, examined, reviewed or generated in providing any services, advice, opinions, or recommendations to any Person, including without limitation, BHC, concerning (a) whether operators of passenger vessels are or are not required to pay employees overtime wages under the FLSA or any other federal, state, or local statute or regulation, or whether the "seaman" exemption or some other exemption applies to obviate the need for such payments, or (b) the subject matter of this Action, the Prior Action, or any other litigation regarding BHC or regarding the issue of overtime wages.**

PVA again objects to the foregoing requests on grounds that such information should be obtained from BHC itself. To the extent that the request demand disclosure of documents unrelated to BHC in the Massachusetts Action, PVA contends that the requests are overly broad

and exceed the scope of permissible discovery. Information related to PVA's dealings with trade association members other than BHC, as well as other persons unrelated to the Massachusetts Action, is confidential and has no relevance to Plaintiffs' case. Since Plaintiffs are unlikely to demonstrate that such information is material to the Massachusetts Action, these documents should be protected from discovery.

**F.    The Subpoena Does Not Provide PVA Adequate Time to Gather Documents and Identify and Prepare Witnesses.**

A court may quash a subpoena in order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense. Fed. R. Civ. P. 26(c). Here, Plaintiffs' Subpoena represents a considerable burden on PVA. The 2008 PVA Annual Convention is scheduled to take place this year, with full-time onsite set-up commencing on January 30, 2008, from February 1, 2008 to February 5, 2008, in Chicago, Illinois. Front Page of Program for PVA Annual Convention, attached as Exhibit C. The convention is scheduled more than a year in advance and is the single-most time intensive demand on the entire PVA staff. All PVA employees, from the date of the Subpoena receipt through the end of the Convention are full-time involved in preparing for the event, which is attended by hundreds of vessel owners and employees. All PVA employees (as well as additional temporary staffing retained for the event) arrive at the convention site well before the convention officially begins and remain at the location well after the event ends. There is simply no time and no PVA employees available to prepare for Plaintiffs' deposition on the date provided in the Subpoena.

Compliance with Plaintiffs' Subpoena would require PVA, which has no direct connection with the litigation, to spend many days gathering and reviewing what is likely to be thousands of documents accumulated over the past nine years in preparation for its Rule 30(b)(6) deposition. It would be extremely prejudicial to require PVA to neglect its business, at the busiest time of year for the trade association, to appear for a deposition in which PVA has no

13

interest and no factual knowledge whatsoever. Surprisingly, at no time prior to serving the Subpoena did Plaintiffs confer with PVA about the date on which they wished to conduct the deposition, nor did Plaintiffs confer with PVA after serving the Subpoena.

Because the requests for documents and Rule 30(b)(6) areas of inquiry are so broad, and the time for compliance so short, it is unreasonable to require PVA to respond to the Subpoena. In the event that compliance is required, PVA should be granted significantly more time to provide responsive information.

Based on the foregoing, the Court should quash the Subpoena, or alternatively order Plaintiffs to limit the Subpoena to a reasonable scope, and order Plaintiffs to allow PVA adequate time to comply.

### G.    Plaintiffs Should Reimburse Non-Party PVA for Its Expenses.

In the event that PVA is required to produce information responsive to the Subpoena, even if the scope is narrowed considerably, the cost of production will be substantial, requiring the work of all PVA employees to review, organize and copy what would likely be thousands of documents. Further, PVA has incurred, and will continue to incur, legal expenses contesting the scope of a clearly overbroad Subpoena. Under Fed. R. Civ. P. 45, the Court must protect a non-party by requiring the party seeking discovery to bear at least enough of the expenses to render the remainder reasonable in scope. At a minimum, Plaintiffs must be required to bear some of the expenses incurred by PVA to comply with the Subpoena.

## CONCLUSION

For the foregoing reasons, PVA respectfully requests that the Court quash the Subpoena in its entirety. If the Court declines to quash the Subpoena in its entirety, PVA requests that the Court (1) narrow the subject matter of the deposition to relevant information within PVA's knowledge, (2) limit the overly broad document requests to a reasonable time period, (3) protect

PVA from requests demanding the production of confidential trade member information unrelated to the Massachusetts Action, (4) exclude those document requests that otherwise seek information irrelevant to the Massachusetts Action, and (5) allow PVA a reasonable amount of time to comply with the Subpoena. Finally, Plaintiffs should reimburse PVA's expenses related to responding to any surviving part of the Subpoena.

Respectfully submitted,

Thomas C. Mugavero, Esq. (D.C. Bar No. 431512)

Steven E. Bers, Esq.
Heather A. James, Esq.
WHITEFORD, TAYLOR & PRESTON, LLP
1025 Connecticut Avenue, N.W.
Suite 400
Washington, D.C. 20036
(202) 659-6800
(202) 327-6171 (facsimile)
tmugavero@wtplaw.com

*Counsel to nonparty Passenger Vessel Association*

EXHIBIT

*A*

## Issued by the
## UNITED STATES DISTRICT COURT

### DISTRICT OF
### DISTRICT OF COLUMBIA

CHRIS McLAUGHLIN, et al.

v.

HARBOR CRUISES LLC, et al.

**SUBPOENA IN A CIVIL CASE**

CASE NUMBER: [1] 06-CA-11299-GAO (D. Mass.)

TO:    Passenger Vessel Association
       901 N. Pitt Street, Suite 100
       Alexandria, VA 22314

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.    regarding the matters referred to in Schedule A hereto.

| PLACE OF DEPOSITION    Cohen Milstein Hausfeld & Toll, P.L.L.C.<br>1100 New York Avenue, N.W., Suite 500, West Tower<br>Washington, D.C. 20005 | DATE AND TIME   February 12, 2008<br>10:00 a.m. |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE SCHEDULE B ANNEXED HERETO.

| PLACE    Cohen Milstein Hausfeld & Toll, P.L.L.C.<br>1100 New York Avenue, N.W., Suite 500, West Tower<br>Washington, D.C. 20005 | DATE AND TIME   February 6, 2008<br>10:00 a.m. |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)  *Matthew Tuccillo*    Attorney for the Plaintiffs | DATE   January 22, 2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
    Matthew L. Tuccillo; Shapiro Haber & Urmy LLP
    53 State Street, Boston, MA 02109          (617) 439-3939

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

1 If action is pending in district other than district of issuance, state district under case number.

## SCHEDULE A

## TOPICS FOR RULE 30(b)(6) DEPOSITION

The "Instructions," "Relevant Time Period," and "Definitions" set forth in the accompanying Schedule B are expressly incorporated herein by reference. The Plaintiffs in *McLaughlin et al. v. Harbor Cruises LLC et al.*, No. 06-CA-11299-GAO (D. Mass.)(the "Action"), will take the deposition of PVA ("Deponent") pursuant to Fed. R. Civ. P. 30(b)(6), concerning the matters set forth below, about which Deponent shall produce a witness or witnesses prepared and competent to testify.

1.      The nature, membership, purpose, activities, and staffing of the Deponent.

2.      The applicability of the FLSA's overtime provisions and/or its "seaman" exemption to employees working on or in support of passenger vessels, including without limitation persons generally characterized as "Deckhands," "Senior Deckhands," and "Galley Staff."

3.      The applicability of other federal, state, or local statute, rule, or regulation pertaining to overtime wages and/or any "seaman" exemption thereto to employees working on or in support of passenger vessels, including without limitation persons generally characterized as "Deckhands," "Senior Deckhands," and "Galley Staff."

4.      The impact, if any, of the federal Jones Act on the issue of whether overtime pay is due to employees working on or in support of passenger vessels, including without limitation persons generally characterized as "Deckhands," "Senior Deckhands," and "Galley Staff."

5.      The nature, duration, and particulars of the relationship between the Deponent and BHC.

6.    All communications between the Deponent and BHC or any other Person regarding the issues of overtime pay for employees working on or in support of passenger vessels and the applicability of the FLSA, Jones Act, or other federal, state or local overtime laws and/or any "seaman" exemption thereto to such employees.

7.    All communications between the Deponent and BHC or any other Person regarding any actual, potential, threatened, or anticipated lawsuits, litigation, or other formal or informal grievances by current or former employees against an operator of passenger vessels concerning the issue of overtime pay, including without limitation this Action or its predecessor, *McLaughlin v. Boston Harbor Cruise Lines, Inc.*, No. 1:03-cv-10905-GAO in the District of Massachusetts ("the Prior Action").

8.    All communications between the Deponent and BHC or any other Person regarding actual, potential, threatened, or anticipated complaints, investigations, reprimands, hearings, or any other administrative or regulatory action by any federal, state, or local body (including without limitation the U.S. Department of Labor) against an operator of passenger vessels concerning the issue of overtime pay to employees working aboard passenger vessels.

9.    Any and all communications, recommendations, opinions, advice, or services provided by the Deponent to any Person, including without limitation BHC, concerning (a) whether operators of passenger vessels are or are not required to pay employees overtime wages under the FLSA or any other federal, state, or local statute or regulation, or whether the "seaman" exemption or some other exemption applies to obviate the need for such payments, or (b) the subject matter of this Action or the Prior Action or any other litigation regarding BHC or regarding the issue of overtime wages.

2

10.    All guidance, including without limitation that contained in newsletters, bulletins, mailings, brochures, postings on www.passengervessel.com or any other website, e-mails, issues of *Foghorn Magazine*, evidencing any advice, information, guidance, or instruction generally that the Deponent disseminated to any Person, including without limitation its members, the media, the public, or BHC concerning the subject of whether the FLSA or any other federal, state, or local statute or regulation concerning overtime wages, or any "seaman" or other exemption thereto, applied to employees working on or in support of passenger vessels.

11.    Any testimony given or any briefs or other documents filed by the Deponent in any legal proceeding, alternative dispute resolution proceeding, administrative hearing, or legislative hearing or session concerning (a) whether operators of passenger vessels are or are not required to pay employees overtime wages under the FLSA or any other federal, state, or local statute or regulation, or whether the "seaman" exemption or some other exemption applies to obviate the need for such payments, or (b) the subject matter of this Action, the Prior Action or any other litigation regarding BHC or regarding the issue of overtime wages.

12.    The present and prior versions of www.passengervessel.com or any other website owned, operated, and/or contributed to by the Deponent.

13.    The Deponent's search for documents responsive to the Requests set forth in the accompanying Schedule A, as well as the Deponent's usual practices with regards to document retention, storage, and destruction.

14.    All topics and subject matters set forth in the Requests set forth in the accompanying Schedule A, as well as all documents produced by the Deponent in response

3

to those requests and all subject matters discussed, contained, or otherwise evidenced in such documents.

## SCHEDULE B

## INSTRUCTIONS

1.     If you object to production or identification of any document or portion of any document on the ground of a privilege or rule of law, please furnish a list identifying each document for which the privilege is claimed, together with the following information:

      a.     its title

      b.     its subject matter;

      c.     its date;

      d.     its author(s) or addressor(s);

      e.     the addressee(s) and recipients(s) of all copies; and,

      f.     the specific reasons why the document is subject to a claim of privilege.

2.     If you object to any of the Definitions or Instructions, please state your objection(s) in your response. If your objection goes to only part of a Document Request, please produce all documents, which do not fall within the scope of your objection.

3.     Pursuant to Rule 34(b) of the Federal Rules of Civil Procedure, please produce the documents requested as they are kept in the usual course of business or organize and label them to correspond with the appropriate Document Request.

4.     If any requested documents are maintained in digital, electronic, and/or imaged form, production of both a tangible or "hard" copy and a copy of the document in digital, electronic, and/or imaged form is hereby requested.

5.     Without in any way limiting the definition of "document" contained in the Federal Rules of Civil Procedure or in this set of document requests, Defendant is specifically instructed to search all centralized and decentralized document management systems, computer and electronic/email archives, and/or backup tapes or disks for documents responsive to the

following requests, and production of such documents should be made regardless of whether such documents currently exist in tangible or "hard" copy form. Production is also sought regardless of whether the user purported to "delete" the document, if such document is capable of being retrieved or restored.

6.    The use of a verb in any tense shall be construed as the use of the verb in all other tenses, whenever necessary to bring into the scope of the specification all responses that might otherwise be construed to be outside the scope.

7.    The use of any singular word includes both the singular and the plural of that word, and vice versa. The use of any masculine or feminine pronoun includes both the masculine and feminine.

## **DEFINITIONS**

A.    "BHC" means the Defendants Harbor Cruises LLC d/b/a Boston Harbor Cruises, Nolan Associates LLC d/b/a Boston Harbor Cruises, and Frederick L. Nolan III individually, or any other entity (such as Modern Continental Construction Company, Inc.) doing business as Boston Harbor Cruises, and includes any divisions, departments, affiliates, agencies, predecessors, successors, present or former officers, directors, agents, or employees thereof and all Persons acting or purporting to act on behalf thereof, including without limitation other members of the Nolan family.

B.    "FLSA" means the federal Fair Labor Standards Act.

C.    The words "and" and "or" are intended to be construed conjunctively or disjunctively as necessary to make the interrogatory inclusive rather than exclusive. The plural of any word used herein includes the singular and the singular includes the plural. The past tense of a verb used herein includes the present tense and the present tense includes the past tense.

2

D.    "Communication" means any contact whatsoever or any transmission or exchange of words, numbers, graphic material, or other information, either orally, electronically, or in writing, whether made, received or participated in, and includes, but is not limited to, any conversation, correspondence, letter, notes, memorandum, interoffice or intraoffice correspondence, telephone call, telegraph, telegram, telex, facsimile, e-mail, or conference of any kind (whether in person, by audio, video, telephone, or in any other form).

E.    The term "document," as used herein, means any item within your possession, custody, or control, as defined in Rule 34(a) of the Federal Rules of Civil Procedure.  Further, the term "document" shall collectively include the original, all nonidentical copies, and drafts of writings of any kind including, but not limited to, all agreements, contracts, communications (as defined above), correspondence, letters, notes, opinion letters, memoranda, reports, minutes, graphs, pamphlets, telegrams, messages (including reports, notes, and memoranda of telephone conversations and conferences), calendar and diary entries, records, data, sound recordings, photographs, computerized documents, compilations, and electronic mail.  All attachments or enclosures to a document are deemed to be part of such document.

F.    "Concern," "concerns," or "concerning" are used in their broadest sense, and mean anything that directly or indirectly, generally or specifically, regards, relates to, refers to concerns, contains, constitutes, contradicts, evidences, embodies, comprises, reflects, mentions, identifies, involves, states, deals with, comments on, responds to, describes, analyzes or is in any way relevant to the subject matter.

G.    "Person" means any natural person or any business, corporate, legal, or governmental entity or association.

H.    "Representative" means (a) any officer, director, owner, shareholder, partner, joint venturer, associate, employee, servant, agent, representative, parent, subsidiary, division, or

3

affiliate of the represented Person; and (b) any other Person acting for, on behalf of, or in concert with the represented Person, including consultants, advisors, lawyers, investment bankers, accountants and anyone else engaged, retained, or employed by the Person.

      I.     Any request concerning a corporation or any other Person that is not a natural person also refers to and includes any and all Representatives acting on its behalf.

      J.     "Any" and "all" mean "each and every."

      K.     "Including" and "includes" mean "include without limitation."

      L.     To "identify" a document, as opposed to a Person, means to state its date; the full name, title, and address of its author(s), addressee(s), and recipient(s); its type or form (e.g., letter, memorandum, etc.); and the name and address of each of its present custodians.

      M.     "Identify" and "identification," when used in reference to a Person that is a natural person means to state that Person's full name, present and last known address, telephone number, and present employment and business affiliation or last known place of employment. When used in reference to a Person other than a natural person, "identify" or "identification" means to state whether that Person is a corporation, partnership, or other organization or entity, and the full name, present and last known address, telephone number, and principal place of its business. Once any Person has been identified properly in response to an earlier request, it shall be sufficient thereafter when identifying that person in response to a later request to state only his name.

      N.     "Identify" or "identification," when used in reference to an oral communication, means to:

      (1)     identify each Person present or involved, state the date thereof, state how the communication was made (e.g., via telephone, person-to-person, or the like);

      (2)     state where the communication was made (e.g., if by telephone, where each Person involved actually participated);

(3)     state the substance of what was communicated by each Person present or involved;

(4)     state whether any document was prepared, either prior to, contemporaneously, or subsequently, that records, sets forth, summarizes, or concerns the substance of that communication and, if so, identify that document.

O.     The terms "PVA," "you," and "your" mean the Passenger Vessel Association and the National Association of Passenger Vessel Owners, Inc., and include any divisions, departments, affiliates, agencies, predecessors, successors, present or former officers, directors, agents, or employees thereof and all Persons acting or purporting to act on behalf thereof.

## RELEVANT TIME PERIOD

The relevant time period, unless otherwise indicated, shall be from January 1, 1999, to the present, and shall include all documents and information which relate in whole or in part to such time period, or to the events or circumstances during such period, even though dated, prepared, generated or received prior or subsequent to that period.

## DOCUMENTS REQUESTED

1.     All documents concerning or constituting communications between or among PVA and any other Person, including without limitation BHC, concerning (a) whether operators of passenger vessels are or are not required to pay employees overtime wages under the FLSA or any other federal, state, or local statute or regulation, or whether the "seaman" exemption or some other exemption applies to obviate the need for such payments, or (b) the subject matter of this Action or its predecessor, *McLaughlin v. Boston Harbor Cruise Lines, Inc.*, No. 1:03-cv-10905-GAO in the District of Massachusetts (the "Prior Action"), or any other litigation regarding BHC.

2.     All documents provided by PVA to any Person, including without limitation BHC, concerning (a) whether operators of passenger vessels are or are not required to pay

employees overtime wages under the FLSA or any other federal, state, or local statute or regulation, or whether the "seaman" exemption or some other exemption applies to obviate the need for such payments, or (b) the subject matter of this Action, the Prior Action, or any other litigation regarding BHC.

3. All documents received by PVA from any Person, including without limitation BHC, concerning (a) whether operators of passenger vessels are or are not required to pay employees overtime wages under the FLSA or any other federal, state, or local statute or regulation, or whether the "seaman" exemption or some other exemption applies to obviate the need for such payments, or (b) the subject matter of this Action, the Prior Action, or any other litigation regarding BHC.

4. All documents concerning any wage and hour investigation(s) of any operators of passenger vessels, including without limitation BHC, conducted by the U.S. Department of Labor or any other federal, state or local regulatory or governmental body regarding the issue of overtime pay to employees.

5. All documents concerning any lawsuits filed against any operators of passenger vessels, including without limitation BHC, by anyone concerning the issue of unpaid overtime wages.

6. All documents concerning any and all recommendations, opinions, advice, or services provided by PVA to any Person, including without limitation BHC, concerning (a) whether operators of passenger vessels are or are not required to pay employees overtime wages under the FLSA or any other federal, state, or local statute or regulation, or whether the "seaman" exemption or some other exemption applies to obviate the need for such payments, or (b) the subject matter of this Action, the Prior Action, or any other litigation regarding BHC or regarding the issue of overtime wages.

6

7.    All documents that PVA considered, examined, reviewed, or generated in providing any services, advice, opinions, or recommendations to any Person, including without limitation BHC, concerning (a) whether operators of passenger vessels are or are not required to pay employees overtime wages under the FLSA or any other federal, state, or local statute or regulation, or whether the "seaman" exemption or some other exemption applies to obviate the need for such payments, or (b) the subject matter of this Action, the Prior Action, or any other litigation regarding BHC or regarding the issue of overtime wages.

8.    All documents evidencing communications with any Person concerning the services, advice, opinions, or recommendations PVA provided to BHC concerning the subject matter of this Action or the Prior Action or any other litigation regarding BHC or regarding the issue of overtime wages, including but not limited to the subject of whether members of PVA are or are not required to pay employees overtime wages under the FLSA or any other federal, state, or local statute or regulation, or whether the "seaman" exemption or some other exemption applies to obviate the need for such payments.

9.    All documents, including without limitation newsletters, bulletins, mailings, brochures, postings on www.passengervessel.com or any other website, e-mails, issues of *Foghorn Magazine*, or materials distributed at PVA's regional meetings or annual convention(s) evidencing any advice, information, guidance, instruction, or commentary generally that PVA disseminated to any Person, including without limitation its members, other operators of passenger vessels, the media, the public, or BHC concerning the subject of whether the FLSA or any other federal, state, or local statute or regulation concerning overtime wages applied to employees working on or in support of passenger vessels.

10.    All documents, including without limitation newsletters, bulletins, mailings, brochures, postings on www.passengervessel.com or any other website, e-mails, issues of

7

*Foghorn Magazine*, or materials distributed at PVA's regional meeting(s) or annual convention(s) evidencing any advice, information, guidance, instruction or commentary generally that PVA disseminated to its constituent members, the media, or the public concerning the subject of whether the "seaman" exemption or any other exemption to the FLSA or any other federal, state, or local statute or regulation concerning overtime wages applied to employees working on or in support of passenger vessels.

11.    All legal briefs, including without limitation *amicus curiae* briefs, filed by the PVA in any legal, administrative or alternative dispute resolution proceeding concerning (a) whether operators of passenger vessels are or are not required to pay employees overtime wages under the FLSA or any other federal, state, or local statute or regulation, or whether the "seaman" exemption or some other exemption applies to obviate the need for such payments, or (b) the subject matter of this Action, the Prior Action, or any other litigation regarding BHC or regarding the issue of overtime wages.

12.    All documents evidencing testimony, whether or oral or written, by PVA, PVA's Legislative Director, PVA's Legislative or Regulatory Issues Committees or any other PVA committee, or any witness testifying on behalf of PVA or its membership, given in any legal proceeding, alternative dispute resolution proceeding, administrative hearing, or legislative hearing or session concerning (a) whether operators of passenger vessels are or are not required to pay employees overtime wages under the FLSA or any other federal, state, or local statute or regulation, or whether the "seaman" exemption or some other exemption applies to obviate the need for such payments, or (b) the subject matter of this Action, the Prior Action, or any other litigation regarding BHC or regarding the issue of overtime wages.

13.    All documents, including without limitation reference materials and forms, from PVA's Reference Library concerning (a) whether operators of passenger vessels are or are not

8

required to pay employees overtime wages under the FLSA or any other federal, state, or local statute or regulation, or whether the "seaman" exemption or some other exemption applies to obviate the need for such payments, or (b) the subject matter of this Action, the Prior Action, or any other litigation regarding BHC or regarding the issue of overtime wages.

**Garfinkle, Ann M.**

| | |
|---|---|
| **From:** | Fred Lazarus IV [flazarus@mica.edu] |
| **Sent:** | Thursday, January 31, 2008 2:53 PM |
| **To:** | 'Machen, Jack P.' |
| **Attachments:** | St Wenceslaus MOU Shea Mark-up (1).DOC |

Jack,

MICA for some time has been engaged in two major initiatives. As part of our new Masters in Community Arts, we are working with a number of community based programs in East Baltimore. In addition we have been working with the Bloomberg School of Public Health on communication and design programs. To move ahead with both of these initiatives, EBDI has agreed to turn over an old convent that is in the middle of its footprint.

Attached is a draft MOU between MICA and EBDI. Could you review this for me and call me with your comments?

Thanks,

Fred

EXHIBIT

tabbies®

_B_

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

\*   \*   \*   \*   \*   \*

\*

**IN RE SUBPOENA**                    Case No. 06-CA-11299-GAO
_DUCES TECUM_           \*

\*                    Case Pending: U.S. District Court,
District of Massachusetts

\*

\*

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**DECLARATION OF JOHN GROUNDWATER IN SUPPORT OF THE PASSENGER
VESSEL ASSOCIATION'S MOTION TO QUASH OR, ALTERNATIVELY, TO
MODIFY THIRD PARTY SUBPOENA _DUCES TECUM_**

I, John Groundwater, declare as follows:

1.      I am the Executive Director of the Passenger Vessel Association ("PVA").  The

following statements are made of my own personal knowledge, and if called upon as a witness in

this action, I could and would competently testify thereto.

2.      Attached hereto as Exhibit A is a true and correct copy of a Subpoena _Duces_

_Tecum_ ("Subpoena") to PVA dated January 22, 2008, which was served on PVA by Plaintiff

Chris McLaughlin on January 23, 2008.

3.      The Passenger Vessel Association is a non profit trade association located in

Alexandria, Virginia.  Including myself, there are only six (6) full time employees of PVA.

4.      The 2008 PVA Annual Convention is scheduled to take place with set-up

commencing on January 30th, from February 1, 2008 to February 5, 2008 in Chicago, Illinois.

This is the single-most time intensive demand upon the PVA staff requiring weeks of

preparation, and substantial on-site set-up.

5.      All PVA employees, from the date of the subpoena receipt through the end of the

Convention are full-time involved in preparing for this convention, attended by hundreds of

vessel owners and employees, and industry suppliers, as well as United States Coast Guard

dignitaries.  All PVA employees ( as well as additional temporary staffing retained for the

Convention) arrive at the convention site before the convention officially begins and remain at the convention location until at least February 6, with the remaining staff returning thereafter.

6.      At no time prior to serving the Subpoena did Plaintiff confer with me or anyone else at PVA concerning the intention to serve discovery, let alone the courtesy of discussing the date on which Plaintiff wanted to conduct discovery.  Nor did Plaintiff confer with me or anyone else at PVA after she served the Subpoena.

7.      No PVA employee has any first hand factual knowledge relevant to any of the facts or claims asserted in Plaintiff's Massachusetts lawsuit against PVA member Harbor Cruises, LLC.  That is, PVA is not involved nor is it aware of the specific details, manner or practices in place relative to the Defendant's vessel operation.

8.      In my opinion, the PVA staff is unable to address the comprehensive request as I understand it without material diversion and disruption at this single-most time-pressed period.


I declare under penalty of perjury that the foregoing is true and correct.  Executed on January 29, 2008.

_____
John Groundwater



# Welcome!

**OFFICIAL PROGRAM**

PVA Annual Convention
at MariTrends 2008
February 2-5

**Sheraton Chicago Hotel and Towers
Chicago, IL**



MariTrends
2008
Your Link to the Future

EXHIBIT

C

tabbies

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| PASSENGER VESSEL ASSOCIATION | ) | |
| | ) | In re Subpoena Relating to |
| Non-party movant | ) | Case No. 06-CA-11299-GAO |
| | ) | Pending in the United States |
| v. | ) | District Court for the District |
| | ) | of Massachusetts |
| CHRIS MCLAUGHLIN, et al. | ) | |
| | ) | |
| Subpoena Issuer | ) | Misc. No. _____ |

## <u>ORDER</u>

UPON CONSIDERATION of movant Passenger Vessel Association's Motion to Quash, or, Alternatively, to Limit Third Party Subpoena, and

IT APPEARING that the Motion is justified under the circumstances; it is hereby

ORDERED that the Motion to Quash, or, Alternatively, Limit Third Party Subpoena is GRANTED; and

The Subpoena is QUASHED in its entirety.

Entered this _____ day of _____, 2008.


_____
Judge
U.S. District Court for the District of Columbia

COPIES TO:

Thomas C. Mugavero
Whiteford, Taylor & Preston, LLP
1025 Connecticut Avenue, NW, Suite 400
Washington, DC 20036
(202) 659-6800


Matthew L. Tuccillo, Esq.
SHAPIRO, HABER & URMY, LLP
53 State Street
Boston, MA 02109